UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-2611 CAS (AJWx) | | Date | September 10, 2012 |
|---|---|---|---|---|
| Title | GRANITE STATE INSURANCE COMPANY; ET. AL. V. GENERAL MOTORS, LLC | | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| CATHERINE JEANG | LAURA ELIAS | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants |
|---|---|
| Susan Gummow | Gregory Oxford |
| Lenell McCallum | Philip Holladay |
| Stephen Newton | |

**Proceedings:**   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(Docket Entry #33, filed July 30, 2012)

## I.   INTRODUCTION

On March 29, 2011, plaintiffs Granite State Insurance Company, a Pennsylvania corporation, and Federal Insurance Company, an Indiana corporation, filed this case against defendant General Motors LLC, a Delaware limited liability corporation. Plaintiffs' complaint alleges three claims for relief: (1) express indemnity, (2) equitable subrogation, and (3) breach of contract.

Defendant moved for summary judgment on July 30, 2012.  Plaintiff filed an opposition on August 20, 2012, and defendant replied on August 27, 2012.  The Court held a hearing on September 10, 2012.  After considering the parties' arguments, the Court finds and concludes as follows.

## II.   BACKGROUND

This case arises out of the settlement of a products liability action, <u>Beverly Deutsch, et. al v. General Motors Corporation, et. al</u>, Case No. BC 389150, filed in Los Angeles Superior Court on April 17, 2008 (the "Deutsch" lawsuit).  Def.'s Statement of Uncontroverted Facts ("Def. Facts") ¶ 2; Ptf.'s Statement of Genuine Disputes ("Ptf. Facts") ¶ 2.  The Deutsch lawsuit was initiated by Beverly and Sanford Deutsch against

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    0

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-2611 CAS (AJWx) | Date | September 10, 2012 |
|---|---|---|---|
| Title | GRANITE STATE INSURANCE COMPANY; ET. AL. V. GENERAL MOTORS, LLC | | |

Renick Cadillac, an authorized GM dealership in California, and General Motors Corporation ("Old GM").  Id.

Shortly after the Deutsch lawsuit was filed, Renick wrote to Old GM and asked it to defend and indemnify Renick pursuant to Renick's Dealer Sales and Service agreement (the "Dealer Agreement").  Def. Facts ¶ 8; Ptf. Facts ¶ 8.  Under the Dealer Agreement:

> General Motors will assume the defense of Dealer and indemnify Dealer against any judgment for monetary damages or rescission of contract, less any offset recovered by Dealer, in any lawsuit naming Dealer as a defendant relating to any Product that has not been altered when the lawsuit concerns [a defect in the design, manufacture or assembly of a GM automobile or bodily injury caused by any of its component parts].

GM Ex. A Article 17.4; Def. Facts ¶ 4; Ptf.'s Facts ¶ 4.  Additionally, the Dealer Agreement incorporates by reference the Service Manual, which contains the following additional provisions on litigation defense and indemnity:

> If the request [for GM to assume the defense and indemnify] is accepted, dealer shall cooperate fully in the defense as GM may reasonably require and dealer authorizes GM to use counsel of its own choosing and to settle the lawsuit at any time at GM's sole expense.

> GM may, at its election, agree only to indemnify dealer and require dealer to conduct its own defense.  In the event of such requirement, dealer shall conduct its own defense and the liability of GM will be limited to the out-of-pocket costs of such defense, including reasonable attorneys' fees, together with the amount of any monetary judgment paid by dealer (or the amount of final settlement paid by dealer if such amount was approved in advance by GM).

GM. Ex. D Arts. 7.1.2(c), (e); Def. Facts ¶ 6; Ptf. Facts ¶ 6; see also Defendant's Response to Plaintiff's Statement of Genuine Disputes ¶ 6 (not disputing the substance of Art. 7.1.2 (c) as quoted by plaintiff).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-2611 CAS (AJWx) | | Date | September 10, 2012 |
|---|---|---|---|---|
| Title | GRANITE STATE INSURANCE COMPANY; ET. AL. V. GENERAL MOTORS, LLC | | | |

According to Granite Insurance and Federal Insurance, the plaintiffs in the Deutsch lawsuit made a presuit demand of $22 million, and by May 2009, Beverly Deutsch had incurred over $9 million in medical expenses.  Ptf.'s Opp. Ex. 2.

Old GM agreed to defend and indemnify Renick in the Deutsch lawsuit.  Def. Facts ¶ 9; Ptf. Facts ¶ 9.  During discovery in 2008, the Deutsch plaintiffs learned that Renick had a $1 million primary insurance policy with Granite and a $5 million excess liability policy with Federal.  Def. Facts ¶ 11; Pft. Facts ¶ 11.  While Old GM had agreed to defend and indemnify Renick in the Deutsch lawsuit, according to plaintiffs the Deutsch plaintiffs wanted to know the extent of Renick's coverage with Granite and Federal due to the possibility that Old GM would file for bankruptcy protection.  Plaintiffs' Statement of Additional Uncontroverted Facts ¶ 7; Defendant's Response to Plaintiffs' Additional Uncontroverted Facts ¶ 7.

In December 2008, the Deutsch plaintiffs made the first of three $6 million policy limits demands on Renick.  Def. Facts ¶ 11; Ptf. Facts ¶ 11.  This offer only extended to the claims against Renick, not to the claims against Old GM.  Id.  Upon receiving the offer, joint counsel for Old GM and Renick recognized that due to Old GM's potential bankruptcy, a conflict of interest existed that prevented counsel from advising Renick on the settlement demand.  Def. Facts ¶ 12; Ptf. Facts ¶ 12.  He therefore advised Renick to seek independent counsel to evaluate the policy limits demand in light of the possibility that Old GM's bankruptcy would prevent it from indemnifying Renick.  Id.

The December 2008 policy limits demand lapsed, and a subsequent $6 million policy limits demand made in February 2008 lapsed as well.  Def. Facts ¶¶ 12 – 14; Ptf. Facts ¶¶ 12 – 14.  On May 26, 2009, the Deutsch plaintiffs stated that they were making one final $6 million policy limits demand that would remain open until June 1, 2009, the date Old GM was expected to file for bankruptcy.  Def. Facts ¶ 15; Ptf. Facts ¶ 15.  Upon receiving this settlement offer, counsel for Federal sent a letter to Old GM demanding that it settle the case for $6 million.  Def. Facts ¶ 17; Ptf. Facts ¶ 17.  In response, Old GM made clear that it would not settle for that amount and did not want to make a settlement offer at that time.  Id.  According to GM, it believed $6 million was an unreasonably high demand, and GM asserts that it believed the settlement value of the case was $3 million.  Def. Ex. U, Whitefield Transcript, at 275: 1 – 5; Def. Ex. T, Brown Transcript, at 308:10 – 309:17.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                     0

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-2611 CAS (AJWx) | Date | September 10, 2012 |
|---|---|---|---|
| Title | GRANITE STATE INSURANCE COMPANY; ET. AL. V. GENERAL MOTORS, LLC | | |

According to plaintiffs, on May 29, 2009, counsel for Old GM stated that it could not assure Renick that it would provide it with coverage after Old GM filed for bankruptcy protection. Plaintiffs' Statement of Additional Uncontroverted Facts ¶ 14; Defendant's Response to Plaintiffs' Additional Uncontroverted Facts ¶ 14. On June 1, 2009, Granite and Federal agreed to pay the $6 million policy demand to settle the Deutsch action against Renick. Def. Facts ¶ 18; Ptf. Facts ¶ 18. The parties agree that Old GM never approved that settlement. Def. Facts ¶ 19; Ptf. ¶ 19. On June 2, 2009, Old GM notified Renick that it would no longer represent it in the Deutsch action. Def. Facts ¶ 22; Ptf. Facts ¶ 22.

On June 1, 2009, Old GM filed for bankruptcy protection, and the next day it sent Renick a letter giving it the option of remaining a GM dealer pursuant to a "Participation Agreement." Def. Facts ¶¶ 20 – 21; Ptf. Facts ¶¶ 20 – 21. The letter stated that Old GM would continue defending and indemnifying dealerships against money judgments, and that General Motors LLC ("New GM") would also do so if the bankruptcy went according to plan. Def. Facts ¶ 21; Ptf. Facts ¶ 21. Additionally, although the Participation Agreement required each dealer to release all claims it presently had against Old GM, the Participation Agreement stated that this release of claims provision did not apply to claims under the indemnification provisions of the Dealer Agreement. Def.'s Ex. N, Participation Agreement, ¶6(a).

On July 10, 2009, New GM purchased some of Old GM's assets. Def. Facts ¶ 23; Ptf. Facts ¶ 23. In the July 5, 2009 order approving the sale, the Bankruptcy Court stated that tort victims "may have to resort to dealers, and the proposed sale motion also contemplates that New GM will indemnify dealers for losses of this type, whenever the claims arose." Def.'s Ex. P, Bankruptcy Court's Decision July 5, 2009, In re General Motors Corp et. al, at 61 fn. 110. Additionally, the parties agree that New GM purchased Renick's Dealer Agreement and Participation Agreement in the bankruptcy sale. Def. Facts ¶ 23; Ptf. Facts ¶ 23.

Granite and Federal requested indemnification from New GM for the $6 million paid in settlement of the Deutsch action. New GM refused, and after mediation, Granite and Federal filed this lawsuit.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    0

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-2611 CAS (AJWx) | Date | September 10, 2012 |
|---|---|---|---|
| Title | GRANITE STATE INSURANCE COMPANY; ET. AL. V. GENERAL MOTORS, LLC | | |

## III.   LEGAL STANDARD

### A.   SUMMARY JUDGMENT

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e).  The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit."  Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324.  Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law.  See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987).  When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997).  Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue.  See Matsushita, 475 U.S. at 587.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-2611 CAS (AJWx) | Date | September 10, 2012 |
|---|---|---|---|
| Title | GRANITE STATE INSURANCE COMPANY; ET. AL. V. GENERAL MOTORS, LLC | | |

### B.    APPLICABLE LAW

The parties agree that, pursuant to the Dealer Agreement, Michigan law applies. The Court agrees.  The Dealer Agreement states that "this agreement is governed by the laws of Michigan."  Def.'s Ex. A Art. 17.12.  The California Supreme Court has adopted "a strong policy favoring enforcement" of choice-of-law provisions.  Nedlloyd Lines B.V. v. Superior Court, 3 Cal. 4th 459, 465 – 466 (Cal. 1992).  A choice of law provision is enforceable under California law as long as it is not contrary to a fundamental policy of California, and either (1) the chosen state has a substantial relationship to the parties or their transaction, or (2) there is any other reasonable basis for the choice of law.  Id. at 466.

Here, there is a reasonable basis for choosing Michigan law because Old GM's principal place of business is Michigan.  Id. at 467 ("If one of the parties resides in the chosen state, the parties have a reasonable basis for their choice.").  Additionally, the parties point to no conflict between a fundamental policy of California and Michigan law, and the Court finds none.  In particular, both states apply general rules of contract interpretation to indemnity contracts.  Zahn v. Kroger Co. of Michigan, 483 Mich. 34, 40 (Mich. 2009); Prince v. Pacific Gas & Elec. Co, 45 Cal. 4th 1151, 1158 (Cal. 2009).

## IV.    ANALYSIS

All of plaintiffs' claims for relief allege that defendant breached its agreement with Renick by refusing to pay the $6 million settlement paid to the Deutsch plaintiffs. Defendant argues that it is entitled to summary judgment on these claims because the Dealer Agreement only required Old GM to indemnify dealers for money judgments or settlements it approved in advance.  It concludes that it therefore has no duty to indemnify Granite and Federal because Old GM never approved the $6 million settlement.  According to defendant, this arrangement – where Old GM decided on its own whether to settle a claim against a dealer – was reasonable because Old GM would bear the cost of any money judgment rendered against a dealer, so it was "playing with its own money."  Def.'s Mot. at 2.

Plaintiffs respond that the Dealer Agreement contemplated that Old GM would indemnify Renick for any reasonable settlement, or that at the very least, the agreement is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-2611 CAS (AJWx) | | Date | September 10, 2012 |
|----------|----------------------|---|------|-------------------|
| Title | GRANITE STATE INSURANCE COMPANY; ET. AL. V. GENERAL MOTORS, LLC | | | |

ambiguous and the true intent of the parties is a factual issue that cannot be resolved on a motion for summary judgment.   Additionally, plaintiffs argue that Old GM breached the covenant of good faith and fair dealing by failing to consider the $6 million settlement offer or assure Renick that it would continue to defend and indemnify Renick after Old GM declared bankruptcy.  Plaintiffs conclude that, as a consequence of this breach, Renick was entitled to settle the claim for a reasonable amount and seek indemnity from Old GM.  Plaintiffs' arguments are considered in turn.

> A. **THE LANGUAGE OF THE DEALER AGREEMENT AND SERVICE AGREEMENT UNAMBIGUOUSLY REQUIRED OLD GM TO INDEMNIFY RENICK ONLY FOR MONEY JUDGMENTS OR APPROVED SETTLEMENTS.**

The Court first considers the plaintiffs' arguments that the language of the contract contemplates indemnification for settlement or is at least ambiguous.  Under Michigan law, a court "construes a written contract according to the intentions therein expressed, when the intentions are clear on the face of the instrument." Birchcrest Bldg. Co. v Plaskove, 369 Mich. 631, 637 (Mich. 1963).   "Where a contract is to be construed by its terms alone, it is the duty of the court to interpret it; but where its meaning is obscure and its construction depends upon other and extrinsic facts in connection with what is written, the question of interpretation should be submitted to the jury, under proper instructions." Klapp v. United Ins. Group Agency, Inc., 468 Mich. 459, 470 (Mich. 2003).

Plaintiffs point to two parts of the Service Agreement in support of their argument:

> If the request [for GM to assume the defense and indemnify] is accepted, dealer shall cooperate fully in the defense as GM may reasonably require and dealer authorizes GM to use counsel of its own choosing and to settle the lawsuit at any time at GM's sole expense.

> GM may, at its election, agree only to indemnify dealer and require dealer to conduct its own defense.  In the event of such requirement, dealer shall conduct its own defense and the liability of GM will be limited to the out-of-pocket costs of such defense, including reasonable attorneys' fees, together

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-2611 CAS (AJWx) | Date | September 10, 2012 |
|---|---|---|---|
| Title | GRANITE STATE INSURANCE COMPANY; ET. AL. V. GENERAL MOTORS, LLC | | |

with the amount of any monetary judgment paid by dealer (or the amount of
final settlement paid by dealer if such amount was approved in advance by
GM).

GM. Ex. D Arts. 7.1.2(c), (e); Ptf.'s Opp. at 16 .

As defendants point out, these provisions fail to show that Old GM was obligated to pay
settlements that it did not approve or negotiate.  These provisions clearly provide that
GM will pay a settlement only if it negotiates the settlement while litigating a case or
approves the settlement while the dealer is litigating a case.  Since the parties agree that
GM did not approve the $6 million settlement at issue in this case, these provisions do
not support plaintiff's argument, unless plaintiff can demonstrate that Old GM withheld
its consent to the settlement in bad faith.  See Auman v. Federal Ins. Co., 81 Mich.App.
740, 742 (Mich. Ct. App. 1978) ("An insurance company in negotiating settlements has a
duty to act in good faith with respect to the interest of the insured"); Commercial Union
v. Liberty Mut. Ins. Co., 426 Mich. 127, 136 (Mich. 1986) (defining a bad faith refusal to
settle by an insurer as a refusal that is "arbitrary, reckless, indifferent, or intentional
disregard of the interests of the person owed a duty," and noting that "bad faith should
not be used interchangeably with either 'negligence' or 'fraud.'").  The Court considers
Old GM's good faith in refusing the settlement in the next section below.

The plain language of the contract supports the conclusion that the Dealer
Agreement and Service Agreement only required Old GM to indemnify dealers for
money judgments or approved settlements.  GM Ex. A Art. 17.4 ("General Motors will
assume the defense of Dealer and indemnify Dealer against any judgment for monetary
damages.").  The Court finds that these agreements are unambiguous.  While Michigan
law required Old GM to act in good faith with respect to Renick's interests when
negotiating settlements, the Court concludes that it did not have the more expansive duty
to indemnify Renick for any settlement reached in the case.

Plaintiffs argue that even if the Court finds that the language of the agreements is
clear, it should nonetheless find a latent ambiguity in the agreements due to the parties'
course of dealing.  According to plaintiffs, the parties' course of dealing shows that Old
GM was responsible for paying settlements while defending and indemnifying Renick.
This argument fails because plaintiffs produce no evidence of an instance during which

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-2611 CAS (AJWx) | Date | September 10, 2012 |
|---|---|---|---|
| Title | GRANITE STATE INSURANCE COMPANY; ET. AL. V. GENERAL MOTORS, LLC | | |

Old GM paid a settlement that it had not approved.  In fact, Leonard Renick's deposition makes clear that he believed that Old GM would be the one making settlement decisions, and that Renick would never have the right to settle unilaterally.  L. Renick Dep. 77:24 – 78:5; 85:16 – 86:5.  The Court therefore finds no evidence to support plaintiffs' argument that a latent ambiguity exists.

> **B.      THERE IS A TRIABLE ISSUE OF FACT REGARDING WHETHER DEFENDANT BREACHED THE COVENANT OF GOOD FAITH AND FAIR DEALING BY FAILING TO CONSIDER THE $6 MILLION SETTLEMENT OFFER IN GOOD FAITH.**

Plaintiffs argue that Old GM breached the covenant of good faith and fair dealing by failing to consider the $6 million settlement offer in good faith and never affirming to Renick that it would continue to defend and indemnify him after bankruptcy proceedings commenced.  Plaintiffs conclude that Renick was therefore entitled to settle the claim without Old GM's approval.

Under Michigan law, "the covenant of good faith and fair dealing is an implied promise contained in every contract that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."  Hammond v. United of Oakland, Inc., 193 Mich. App. 146, 152, 483 N.W.2d 652, 655 (Mich. Ct. App. 1992) (internal quotations omitted).  Under the covenant of good faith and fair dealing, "[w]here a party to a contract makes the manner of its performance a matter of its own discretion, the law does not hesitate to imply the proviso that such discretion be exercised honestly and in good faith."  Ferrell v. Vic Tanny Intern, Inc., 137 Mich. App. 238, 243 (Mich. Ct. App. 1984).

Plaintiffs make two arguments suggesting that Old GM did not consider the $6 million settlement offer in good faith.  First, plaintiffs observe that Old GM had not convened its settlement authority committees to determine whether to approve the settlement in the Deutsch action.  In deposition testimony, Doug Brown, an Old GM attorney, describes in detail the settlement committees used by Old GM:

> [W]e had a group called the round table where we would present cases for authority or discussion . . . and then we also had a group called the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-2611 CAS (AJWx) | Date | September 10, 2012 |
|---|---|---|---|
| Title | GRANITE STATE INSURANCE COMPANY; ET. AL. V. GENERAL MOTORS, LLC | | |

settlement review committee. . . . The round table would hear cases probably in the first instance, and then depending on the level of authority sought, you would go to the settlement review committee later. . . the round table authority was $1.5 million. . . if you were asking for more authority than $1.5 million, it had to be reviewed by that last group.

Ptf.'s Ex. 15, Brown Transcript,34:25 – 36:9.  According to Brown, "[w]e had not completed our evaluation process and I had not taken the [Deutsch] case to the round table for authority."  Id. at 228: 7 – 10.  Additionally, Derek Whitefield, GM's outside counsel retained to litigate the Deutsch lawsuit, stated that he did not provide a written case evaluation to Doug Brown discussing settlement of the Deutsch lawsuit after September 2008.  Ptf.'s Ex. 12, Whitefield Transcript, 203:5 – 16.  He further states: "I don't recall providing [Brown] any specific recommendation regarding the amount of money that we might recommend GM authorize to settle the case.  I'm quite confident that we never asked him to convene the people at GM who provide settlement authority." Id.

Second, plaintiffs assert that as of May 2009, Old GM had determined that it would not extend settlement authority on any cases due to its pending bankruptcy.  In support of this argument, plaintiffs point to Brown's deposition testimony, in which he states "there was a concern about conserving cash [around May 2009] and so, you know, there was a sense at some point that we could not extend a lot of authority."  Ptf.'s Ex. 15, Brown Transcript, 290:20 – 23.[1]  In further support of this point, plaintiffs cite Whitefield's deposition testimony that "at some point [in May 2009] we were advised that there . . . was no more opportunity to settle cases."  Ptf.'s Ex. 12, Whitefield Transcript, at 207:10 – 22.

---

[1]It should be noted, though, that Doug Brown testified that he does not recall any articulated "blanket prohibition" against settlement.  Ptf.'s Ex. 15, Brown Testimony, at 290: 6 – 23.  However, viewing this testimony in the light most favorably to plaintiff, one can conclude that Old GM had determined that it would not extend settlement authority to its cases in May 2009.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA       0

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-2611 CAS (AJWx) | Date | September 10, 2012 |
|---|---|---|---|
| Title | GRANITE STATE INSURANCE COMPANY; ET. AL. V. GENERAL MOTORS, LLC | | |

Defendant responds that Old GM had fully considered the settlement and rejected it as unreasonable.  Defendant observes that Whitefield testified that he thought the settlement value of the case was in the area of $2 million, and that he "would have been embarrassed" to settle the case for anything higher than $3 million.  Def. Ex. U, Whitefield Transcript, at 275: 1 – 5.  Whitefield communicated his opinion of the case's $3 million settlement value to counsel for plaintiff Federal Insurance around the time of settlement.  Def. Ex. M, E-mail from D. Rothman to C. Short.  Furthermore, defendant points out that Doug Brown, an in-house GM attorney, also testified that he never believed the $6 million offer was reasonable.  Def. Ex. T, Brown Transcript, at 308:10 – 309:17.  Defendant admits that the settlement authority committees did not meet, but argues that there was no reason to seek authority to pay a settlement because its counsel thought $6 million was an unreasonable figure.

The Court finds that there is a disputed question of fact regarding whether GM rejected the settlement honestly and in good faith.  Though Whitefield and Brown state in deposition testimony that they did not value the case at $6 million, defendant does not submit evidence that would compel a reasonable person to find as a matter of law that this valuation was reached in good faith.  In fact, Whitefield's deposition testimony calls Old GM's good faith into question because it suggests that he did not provide a case evaluation or settlement recommendation to Brown after September 2008.  Ptf.'s Ex. 12, Whitefield Transcript, 203:5 – 16.[2]  Moreover, Old GM did not convene its settlement authority committees to consider the settlement offer and may have had a policy against settling cases in May 2008.  Instead, it declared that there was a conflict of interest that prevented it from responding to the $6 million demand.  In other words, there is a

---

[2]Whitefield testified as follows at his deposition:

"Q: So my question is: Basically, after September of 2008, did you ever provide either a written or verbal case evaluation to Doug Brown in which you talked about how much money should be authorized for settlement of the Deutsch claims?

A: I don't believe that any written evaluation was provided. I don't recall providing him any specific recommendation regarding the amount of money that we might recommend GM authorize to settle the case."  Ptf.'s Ex. 12, Whitefield Transcript, 203:5 – 16.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    0

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-2611 CAS (AJWx) | Date | September 10, 2012 |
|---|---|---|---|
| Title | GRANITE STATE INSURANCE COMPANY; ET. AL. V. GENERAL MOTORS, LLC | | |

disputed question of fact as to whether Old GM breached its duty to defend and indemnify its insured.  Viewing these facts in the light most favorable to plaintiff, a reasonable person could conclude that Old GM did not consider the settlement in good faith.  Therefore, plaintiffs have established a triable issue of fact regarding whether Old GM considered the $6 million offer in good faith.[3]

**V.     CONCLUSION**

Defendant's motion for summary judgment is therefore DENIED.

IT IS SO ORDERED.

| | 00 | : | 11 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |

---

[3]At oral argument, counsel for defendant urged the Court to consider Grand Trunk Western Railroad Inc., v. Auto Warehousing Company, 262 Mich.App. 345 (Mich. Ct. App. 2004), arguing that it precluded the Court from finding that there is an implied covenant of good faith and fair dealing in this case.  The Court disagrees that Grand Trunk can be so interpreted.  In Grand Trunk, the Michigan Court of Appeals held that an indemnitor's duty to defend was determined by the language of its indemnity contract, and that the trial court improperly held that an indemnitor was subject to the same standard as an insurance company.  Id. at 353 – 354.  This holding is not at variance with the Court's ruling that Old GM was bound to consider the $6 million settlement in good faith by reason of the covenant of good faith and fair dealing implied into every contract.

Under Grand Trunk, there are triable issues of fact in this case.  The Michigan Court of Appeals in Grand Trunk held that an indemnitee can bind its indemnitor to a reasonable, good faith settlement if the indemnitee shows its potentially liability and the indemnitor had notice of the claim but refused to defend it.  Id. at 353, 355.  Here, there are triable issues of fact regarding whether Old GM breached its duty to defend, whether Renick was potentially liable in the Deutsch Lawsuit, and whether the $6 million settlement was reasonable.